UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRIAD ADVISORS, LLC, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| RICHARD KIM, EDWARD KRNAK, EVELYN BOOS, STEPHEN MAZZONI, DAVID WILKS, JANET ALDRED, DIANE MASTRO, MICHAEL AND SHIN SHIN CHIN, KRISTIN NOWAK, AND KAREN NICKERSON, | ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) | |

## NATURE OF THE ACTION

1. This action seeks to enjoin the named Defendants that are improperly attempting to pursue claims in a FINRA Arbitration against Plaintiff broker-dealer, Triad Advisors, LLC, ("Triad" or "Plaintiff").

2. In short, Defendants Richard Kim, Edward Krnak, Evelyn Boos, Stephen Mazzoni, David Wilks, Janet Aldred, Diane Mastro, Michael and Shin Shin Chin, Kristin Nowak, and Karen Nickerson (collectively "Defendants"), who all live in and around the Chicago area, have no legal basis to force Triad to arbitrate the claims these Defendants are pursuing against it in the FINRA Arbitration (defined below). This Action is intended to stop such improper efforts such that each Defendant can only pursue any such claims against Triad in one available forum, a court of competent jurisdiction.

3. The FINRA Arbitration is captioned *Richard Kim et. al., v. Triad Advisors LLC*, FINRA No. 23-03651 (the "FINRA Arbitration"). In that action, Claimants' counsel has attempted to group together roughly 70 Claimants to sue Triad concerning purported investments purchased

1

through two individuals, James Walesa ("Walesa") and Kenneth Luccioni ("Luccioni"). In substance, Defendants claim that Walesa and/or Luccioni recommended certain investments that were not suitable for them. (*See* FINRA Arbitration Amended Statement of Claim ("ASOC"), attached hereto as Exhibit A[1]).

4. Luccioni was an independent contractor with Triad but left that association roughly eight (8) years ago in 2016. Walesa was also once an independent contractor of Triad, but left that association roughly five (5) years ago in 2019.

5. Claimants' allegations appear to stem primarily from two groups of investments: *First*, Claimants allege losses from their decisions to invest with Walesa and/or Luccioni in alternative investments, including in the oil and gas industry, and *second*, Claimants allege claims related to investments with Walesa and/or Luccioni in which Walesa held an interest.

6. Claimants premise their rights to arbitration on FINRA Rule 12200 of the FINRA Code of Arbitration for Customer Disputes (the "Code"), which provides that a FINRA member must arbitrate a dispute if (a) required by written agreement; (b) requested by a "customer," or in relevant part, (c) if the dispute is between a "customer" <u>and</u> the member firm and the dispute arises in connection the business activities of the member firm. (*See* FINRA Rule 12200.)

7. As set forth in the ASOC (Exhibit A), Defendants have filed a suitability case against Triad.

---

[1] Claimants' initial State of Claim, filed on December 28, 2023, included 10 individually named Claimants, with spouses and related entities/trusts. Claimants then filed an Amended Statement of Claim on February 8, 2024, adding an extraordinary number of other claimants and pushing their numbers to 50 sets of claimants (grouping spouses, etc.) and a total of 77 individually named claimants. On February 28, 2024, Triad filed its Special Appearance Answer and reserved the right to seek leave in Court to enjoin any claim filed by individuals who were never customers of Triad. Triad will be separately filing similar Actions as the one here in courts of competent jurisdiction as to all Claimants that have sued Triad who were never its customer and have no right to seek arbitration. For those Claimants that were customers of Triad, it moved to sever those arbitration claims as they were improperly joined together into an untenable 70+ Claimant case.

8. In FINRA's Interpretative Guidance and Frequently Asked Questions, the specific issue of the definition of "customer" in connection with a suitability claim was confirmed in response to the question presented as follows: "Q2.1.What constitutes a "customer" for purposes of the suitability rule?" [Notice 12-55 (FAQ 6(a))]. FINRA Notice to Members ("NTM") 12-55 (R.370) provided the following Answer:

> A2.1. The suitability rule applies to a broker-dealer's or registered representative's recommendation of a security or investment strategy involving a security to a "customer." FINRA's definition of a customer in FINRA Rule 0160 excludes a "broker or dealer." **In general, for purposes of the suitability rule, the term customer includes a person who is not a broker or dealer <u>who opens a brokerage account at a broker-dealer or purchases a security for which the broker-dealer receives or will receive, directly or indirectly, compensation</u> even though the security is held at an issuer, the issuer's affiliate or a custodial agent (e.g., "direct application" business, "investment program" securities, or private placements), or using another similar arrangement**.

FINRA NTM 12-55 (emphasis added). In short, a "customer" is someone who "opens a brokerage account at a broker-dealer or purchases a security for which the broker-dealer" receives compensation. Here, none of the Defendants opened a brokerage account at Triad and Triad did not receive any compensation related to alleged sales of investments to any of the Defendants.

9. Courts have confirmed similar definitions for the term "customer" in connection with FINRA members. For example, the term "customer" has been defined by the Second Circuit in *Citigroup Global Markets, Inc. v Abbar*, 761 F.3d 268 (2d Cir. 2014) as "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." Recently, under the auspices of the Seventh Circuit, a Wisconsin district court ruled similarly, relying on the Second Circuit's definition of "customer," and examined various opinions where Rule 12200 was interpreted (including the Second, Fourth, Fifth, Eighth, and Ninth Circuit). In rendering its Order, the court stated those cases all share a common concept – "a business relationship between the purported customer and the FINRA member,

3

usually by purchasing goods or services from a FINRA member." (*Centaurus Financial, Inc. vs. Ausloos and FINRA*, No. 19-CV-243, 2019 WL 2027271, at *5 (E.D. Wis. May 8, 2019)).

10. In the ASOC, conspicuously absent are the date of purchases of the purported investments at issue by Defendants. Upon information and belief, these investment purchases were purchased many years ago. By way of example, Luccioni who purportedly sold these investments, has not associated with Triad for roughly eight (8) years and Walesa, who also purportedly sold these investments, has not been associated with Triad for roughly five (5) years.

11. The reason age of the purported investments is important is because Triad can only determine if any of the 70+ Claimants in the FINRA Arbitration were ever customers of Triad from a review of its records. Pursuant to relevant Rules relating to the retention of broker-dealer records, broker-dealers like Triad are not required to retain records indefinitely. Triad conducted a good faith search of its records and determined it has no record of Defendants having any customer relationship with Triad generally, let alone any evidence of purported sales of the investments at issue to Defendants as set forth in the ASOC. (*See* Declaration of Gregory Curley, attached hereto as Exhibit C). Furthermore, in March 2024, Triad sent communication to Defendants' counsel to determine if they had any record of a customer relationship between any Defendant and Triad – Defendants' counsel ignored that communication and provided no such evidence. (*See* Declaration of Scott Sherman, attached hereto as Exhibit B).

12. Based on the review by Triad of its records as discussed above and the lack of any evidence from Defendants who have the burden to show they were, in fact, customers of Triad (which they have not), Defendants were not only not "customers" of Triad but also Defendants never corresponded with Triad, never had any business dealings or concern with Triad, and never even

heard of Triad. Moreover, Triad made no compensation related to any sale of purported investments sold by Luccioni and/or Walesa to any Defendant.

13. Claimants are not customers of Triad under Rule 12200 of the FINRA Code and the dispute as set forth in Claimant's ASOC is not arbitrable at FINRA.

14. The FINRA Arbitration is proceeding with respect to customers of Triad, albeit Triad has requested FINRA to sever each Claimant as they are improperly joined together in one untenable 70+ Claimant arbitration.

15. Triad will be prejudiced without any adequate remedy at law if forced to proceed in the FINRA Arbitration concerning non-customers such as Defendants here.

16. In short, there is no legal basis upon which Triad can be forced to arbitrate the claims asserted by Defendants regarding age-old investments in the FINRA Arbitration against Triad because Defendants are not and never were Triad's "customers." Defendants' pursuit of claims against Triad in that forum should be enjoined.

17. Furthermore, Triad seeks a declaratory judgment that Defendants are not customers of Triad and have no basis to compel arbitration of their claims against Triad.

## PARTIES

18. Plaintiff Triad is a limited liability company with its main office located at 2300 Windy Ridge Parkway, Suite 750, Atlanta, Georgia 30339. Triad is a registered broker dealer and member of the Financial Industry Regulatory Authority ("FINRA").

19. Upon information and belief, Defendants are all residents and citizens of the State of Illinois, as stated by each Defendant in the ASOC.

**JURISDICTION AND VENUE**

20. Plaintiff brings this action to request to obtain a declaratory judgment and for injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a Georgia company without any members in the State of Illinois, Defendants are citizens of Illinois, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

22. Venue is proper in this district under 29 U.S.C. § 1391(a)(2), as based upon the ASOC, Defendants all live within this venue and all Defendants have sought to arbitrate in the FINRA Arbitration within this district.

**FACTUAL BACKGROUND**

23. The following purported facts are those set forth by Defendants in the ASOC filed in FINRA.

24. Defendant Richard Kim was introduced to Mr. Luccioni through his job and he alleges that he entrusted Luccioni with his retirement savings, a substantial portion of which he now "fears" has been lost. (*See* Exhibit A ¶ 3). Defendant lives in Chicago, Illinois (*See id.*).

25. Defendant Edward Krnak was a longtime client of Luccioni who alleged that Luccioni recommended that he invest "alongside him" in Walesa's companies. (*See* Exhibit A ¶ 7). Defendant lives in Bartlett, Illinois. (*See id.*).

26. Defendant Evelyn Boss alleges that, "like her son," she was "recommended to Walesa" and Walesa convinced her to invest in his companies. (*See* Exhibit A ¶ 10). Defendant lives in Park Ridge, Illinois. (*See id.*).

27. Defendant Stephen Mazzoni was referred to Walesa through accounting clients who invested savings with Walesa's companies. (*See* Exhibit A ¶ 13). Defendant lives in Arlington Heights, Illinois. (*See id.*).

28. Defendant David Wilks was introduced to Walesa through a photographer colleague and he alleges that he now "believes" that his entire investment has been lost. (*See* Exhibit A ¶ 28). Defendant lives in Elgin, Illinois. (*See id.*).

29. Defendant Janet Aldred became acquainted with Walesa through a local networking organization and she alleges that her invested funds into Walesa companies have vanished. *(See* Exhibit A ¶ 31). Defendant lives in Elgin, Illinois. (*See id.*).

30. Defendant Diana Mastro is a widow to her late husband, Frank, and she alleges that "investments at issue had been recommended to Frank just prior to his passing" and that it is now gone. (*See* Exhibit A ¶ 33). Defendant lives in Huntley, Illinois. (*See id.*).

31. Defendant Michael and Shin Shin Chin were introduced to Walesa by family and allege that they "believe" money entrusted to Walesa has been lost. (*See* Exhibit A ¶ 35). Defendants live in Inverness, Illinois. (*See id.*).

32. Defendant Kristen Nowak was introduced to Walesa through her parents and allege that she entrusted Walesa with her retirement savings. (See Exhibit A ¶ 40). Defendant lives in Palatine, Illinois. (*See id.*).

33. Defendant Karen Nickerson alleges that she inherited investments at issue from her parents and "fears" her portion of her "parents' legacy" has been lost. (*See* Exhibit A ¶ 46). Defendant lives in Niles, Illinois. (*See id.*).

34. On or about February 8, 2024, roughly 70 Claimants, including Defendants, filed their ASOC naming Triad as Respondent and requested an expedited hearing pursuant to NASD Notice

to Parties dated June 7, 2004, titled "Expedited Proceedings for Elderly or Seriously Ill Patients." (*See* Exhibit A at p. 3).

35. Collectively, Defendants' purported claims concern alleged investments in LJM Preservation and Growth Fund ("LJM") and/or companies in which non-party and former Triad representative Walesa held an ownership or investment interest. (*See* Exhibit A).

36. In the ASOC, the Defendants do not disclose any details about these investments or how Triad was associated with these Defendants other than general bald allegations that communication with Triad letterhead went to some of the Defendants (*see* Exhibit A) – noting no such evidence was provided to Triad when it requested Defendants' counsel provide evidence of customer relationships with Triad. (*See* Exhibit B).

37. Defendants ASOC assert the following claims against Triad all concerning suitability of these purported investments at issue and related allegations of supervision by Triad related to the same: (I) Breach of Fiduciary Duty; (II) Suitability; (III) Fraudulent or Negligent Misrepresentation and Omitted Material Information in the Sale of Investments to Claimants (IV) Violation of FINRA Rules 2010, IM-2310-2, and 2020, (V) Failure to Supervise, (VI) Fraudulent Inducement to Hold Investment, and (VII) Breach of Contract. (*See* Exhibit A).

38. It is undisputed that Triad was not involved in the sale or recommendation of any of the alleged investments at issue. (*See* Declaration of Gregory Curley attached hereto as Exhibit C).

39. Triad has never provided any investment services or other services to the Defendants. (*See* Exhibit C).

40. Defendants have never had an account with Triad. (*See* Exhibit C).

41. Triad has not received any compensation from Walesa or Luccioni as a result of Defendants' investments. (*See* Exhibit C).

42. Defendants have never entered into any agreement with Triad to arbitrate any claims. (*See* Exhibit C).

43. Defendants have never been "customers" of Triad according to Triads own records and as the term is defined by the FINRA Code and by the progeny of well-established case law. This fact is further confirmed by Defendants' failure to respond to Triad's requests for any such records of any customer relationship with Triad. (*See* Exhibit C).

44. Defendants have no right to adjudicate their purported claims against Triad in the FINRA Arbitration, and Triad does not consent to adjudication of Defendants' claims against Triad in the FINRA Arbitration.

## **FIRST CLAIM FOR RELIEF**
## **(DECLARATORY JUDGEMENT AS TO NON-ARBITRABILITY – 28 U.S.C. Sec. 2201)**

45. The proceeding paragraphs are re-alleged and incorporated herein by reference.

46. An actual, present, and justiciable controversy has arisen between the parties as to whether the Defendants are customers of Triad within the meaning of FINRA Rule 12200 of the Code.

47. Triad seeks a declaration that the Defendants are not customers of FSC and that Defendants are precluded from pursing the FINRA Arbitration.

## **SECOND CLAIM FOR RELIEF**
## **(INJUNCTION)**

48. The proceeding paragraphs are re-alleged and incorporated herein by reference.

49. Triad seeks a preliminary and permanent injunction enjoying the Defendants and their respective agents, servants, employees, and attorney, and each of them, from pursuing their claims against Triad in the FINRA Arbitration.

50. Triad has not consented to arbitrate any dispute with any of the Defendants.

51. Triad is a member of FINRA, and none of the Defendants are "customers" of Triad within the meaning of FINRA Rule 12200, which requires member firms to arbitrate customer disputes at the request of the customer. (*See Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003)).

52. Defendants have asserted claims for money damages against Triad in the Arbitration and, unless enjoined, will continue to pursue such claims to obtain a judgement.

53. The FINRA Arbitration is proceeding related to actual customers of Triad.

54. Unless Defendants are enjoined, Triad will suffer irreparable harm in that Triad will be obliged to defend itself in the FINRA Arbitration and risk an adverse outcome in those proceedings. In this Circuit and elsewhere, being compelled to arbitrate a dispute one has not agreed to arbitrate constitutes irreparable harm as a matter of law. *Chicago School Reform Board of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 ("forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm.") (citing *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445, 447 (S.D.N.Y. 1997)).

55. Triad has no adequate remedy at law, in that any post-award challenge by Triad to an arbitrator's award in the Arbitration would still require Triad, in the first instance, to defend itself in an arbitration proceeding to which it did not consent.

56. Defendants will suffer no irreparable harm in the event an injunction issues, as Defendants will still be able to pursue their alleged claims against Triad in an appropriate judicial forum.

57. The balance of equities tips decidedly in favor of Triad which, if no injunction issues, would be forced to defend itself in a forum to which it did not consent.

58. The public interest would be served by prohibiting Defendants from pursuing their claims against Triad in a forum to which Triad did not consent, and requiring Defendants to pursue such claims, if at all, in an appropriate judicial forum.

## **PRAYER FOR RELIEF**

WHEREFORE, Triad is entitled to judgment as against Defendants:

   i. Preliminarily and permanently enjoining Defendants from proceeding in any way with the FINRA Arbitration; and

   ii. Declaring that Defendants' dispute with Triad is not arbitrable;

   iii. Awarding Triad all attorney's fees and other costs associated with this Action; and

   iv. Awarding any other and further relief that the Court deems is just and proper.

Respectfully submitted this 17th day of April 2024.

   /s/ Alison S. Cooney
   Alison S. Cooney (Illinois Bar No. #6312577)

   NELSON MULLINS RILEY & SCARBOROUGH, LLP
   123 N. Wacker Drive, Suite 2100
   Chicago, IL 60606
   P: (312) 376-1023
   F: (312) 264-9491
   alison.cooney@nelsonmullins.com

   Scott S. Sherman (Georgia Bar #642090) (*Pro hac vice* forthcoming)
   NELSON MULLINS RILEY & SCARBOROUGH, LLP
   201 17th Street NW, Suite 1700
   Atlanta, Georgia 30363
   scott.sherman@nelsonmullins.com

   *Attorneys for Plaintiff Triad Advisors, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2024, I electronically filed TRIAD ADVISORS, LLC'S COMPLAINT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, and sent a copy of the foregoing document via first class mail, postage prepaid, addressed to:

<table>
<tr>
<td>
GANA WEINSTEIN LLP<br>
Adam J. Gana<br>
Adam J. Weinstein<br>
345 Seventh Avenue<br>
21st Floor<br>
New York, New York 10001<br>
Tel: (212) 776-4252
</td>
<td>
KURTA LAW<br>
Jonathan Kurta<br>
Robert Van De Veire<br>
Hannah Ross<br>
295 Madison Avenue, Suite 705<br>
New York, New York 10017<br>
Tel: (212) 658-1502
</td>
</tr>
</table>

Dated this 17th day of April 2024.

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)

Nelson Mullins Riley & Scarborough, LLP
123 N. Wacker Drive, Suite 2100
Chicago, IL 60606
P: (312) 376-1023
F: (312) 264-9491
alison.cooney@nelsonmullins.com

Scott S. Sherman (Georgia Bar #642090) (*Pro hac vice* forthcoming)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
scott.sherman@nelsonmullins.com

*Attorneys for Plaintiff Triad Advisors, LLC*